to our next argument, which is Marco Antonio Martinez Roman versus Merrick Garland. Counsel? Good morning, Zoe Levine for Petitioner Marco Martinez Roman. May it please the court, I'd like to reserve three minutes of my time for rebuttal. Okay. We are here today because Marco Martinez Roman, the primary caregiver to three minor children, was deprived of his chance to fight to keep his family intact. Immigration Judge Conroy severely and improperly truncated the presentation of evidence and then denied Mr. Martinez's claim for cancellation of removal on the grounds that there was insufficient proof. The only way Judge Conroy could reach this conclusion was through multiple and compounding legal errors that violated due process and the relevant precedents. He excluded wholesale the key testimony of four live witnesses, including Mr. Martinez's 13-year-old daughter. They were not there though, were they not there on the date of the hearing? That's correct, Your Honor. The witnesses were not available that day and partially because... They had moved for an adjournment, didn't they? That's correct, because at the minute, the caregivers for Mr. Martinez's daughter were not able to bring her to court and had a conflict. The council did seek a brief adjournment in order to be able to present the live testimony, but the basis of Judge Conroy's decision to exclude the witnesses... I guess the other relevant point here, arguably relevant, is there have been five continuances, right? So this was really a sixth continuance? Your Honor, there had been previous continuances granted in order to prepare the case prior to the scheduling of the final hearing, and over the course of the removal proceedings, four different immigration judges had handled the matter, had granted continuances, finding good cause. This was the first instance in which a continuance was requested... It was the second continuance for a continuance of the removal hearing, and both had been denied by immigration judges. Am I right also, though, in understanding that the most recent continuance request did not identify all of the witnesses who Mr. Martinez-Roman now seeks to present, and that it was denied without prejudice to renewal in the actual hearing, but the immigration judge didn't have full notice of everything that Mr. Martinez-Roman presented actually at the hearing that he wanted to have the continuance for? Is that a correct understanding, or did I have it wrong? I'll clarify. So the first motion to continue was in order to locate an expert witness who could evaluate Mr. Martinez's children and present testimony on such a short timeline. That was the motion that was denied without prejudice. By the time we were at the actual removal hearing, Judge Conroy had a witness list that included each and every witness that was sought to be presented, and when we made the motion at the hearing, it was because their presence could not be secured on that particular day, and a brief continuance was to be made to ensure that they could be present. But the basis for Judge Conroy's holding to exclude the witnesses was that he found, before having reviewed their written submissions themselves, that their evidence would have been duplicative. He prejudged the testimony of the witnesses and determined that the testimony would be duplicative, and it was on that basis. It would be duplicative of the statements that were submitted, right? Isn't that what he said? That's correct. He also said he hadn't reviewed the expert witnesses' submission, so he really had not prepared and had not found adequate grounds to determine that the live... Your argument is that the live testimony would have been more convincing and fuller than the written submissions? Certainly. To begin, his 13-year-old daughter had submitted a one-page handwritten letter, and certainly she would have elaborated significantly on the hardship that the absence of her father would create in her life in her live testimony, and she would have touched on topics that Judge Conroy himself... Is there authority for the live testimony as opposed to something that's in writing? So the immigration statutes guarantee respondents the right to present evidence on their own behalf, and the immigration judge has the obligation under the regulation to receive and consider any relevant and probative evidence. Then we have a number of cases from various circuits that emphasize the critical importance of live testimony, particularly on key issues like credibility and the sensitive and nuanced hardship determination that was required in this matter. I can understand that with regard to Emily, that the one page wouldn't reflect the full... Everything that she had to convey in terms of kind of emotional import as well as factual, but I'm not sure about the expert. I mean, it's his obligation to present a report that fully assesses the circumstances and offers his views. I guess all I can see that wouldn't have been... That would have been omitted is his answers to specific questions. Is there something that he would have said in an oral presentation that was omitted from the report? Well, this is precisely the import of live testimony from an expert. And the Ninth Circuit has explored this in a case called Zaludkin saying that one of the most important features of expert testimony is to ensure that the immigration judge has interpreted the written materials correctly. In this case, that proved to be absolutely essential given that Judge Conroy effectively distorted the ultimate conclusion of the expert, which was that it was clinically predictable that the children would suffer extreme psychological damage in the absence of their father. He contrived inconsistencies in the expert's opinion. And he himself said on the record at the beginning of the hearing that he was ruling that the expert could not testify, but if anything unusual came up, that's at the record at 256, that he might reconsider. That is precisely the circumstances under which live testimony is essential to get at this critical hardship determination. Was there a request made at the end to call the expert? Was the request renewed? Your Honor, the counsel articulated her objection as best she could given the hurried nature of this proceeding at the outset and could not have been aware that the immigration judge on reviewing the materials perhaps days or weeks later would have questions. You've reserved three minutes for rebuttal. We'll hear from the government. Counsel? I'm mute. Thank you. Good morning, Your Honors. May it please the court, Charisse Pratt for the respondent, Merrick Garland. The court is bound by the precedent announced in Barkle-Sandoval. Matters left to the board's discretion are beyond the court's review. There's no jurisdiction over a claim that the board should have reached a different result. That's not the thrust of our questions. The thrust of our questions was the due process nature of the hearing that Mr. Romano Martinez-Román received. We are not questioning whether the judge reached the right conclusion as to the hardship for the three children. Okay, so the burden was on the petitioner to show that there was good cause for the continuance and to articulate particularized facts describing the evidence that would have been presented that they failed to do. The immigration judge found that the psychologist's report was very thorough and the psychologist had interviewed Emily and the two other children and had written a detailed report based on those interviews. In which he concluded that they would suffer enormous hardship. From the separation of their father, but he also concluded that all of their problems were treatable. Treatable with things like breathing exercises. And counseling, weekly counseling sessions as well. Right, he didn't deal with the fact that the mother appeared to be totally incapable of arranging them to get to school. How would she get them to counsel? That does not really appear in the record. That is Mr. Martinez-Román's representations. But if you look at the record, they were together until 2018 where the mother stayed home and raised the children. In 2018 she left him. And then he says he had some custody of the two younger kids for a period before he was detained in 2018. And if you also, if you look at the psychologist's report, part of the trauma, they said Jaden suffers from intrusive memories of his father's arrest. The kids were present when the father was stealing from Walmart and was arrested. When the father was intoxicated and getting into disputes at McDonald's and then driving away in the car with the kids. They saw that and that has traumatized them as well. And so it is incorrect to state that the father was the primary caretaker for these children until 2018 when his wife left him. It was the mother who stayed home and raised the kids. It was the mother who took the kids to the psychologist. It was the mother who the psychologist spoke to and showed concern. Until 2018. And then things changed in 2018. He was detained. Well, maybe I'm not getting the timeline here. There was a period of time when he was taking care of the two of the kids. That's what he says. He says it was... But the IJ essentially found him credible in most respects. So he said it and we accept it, right? Okay, sure. Well, I'm just pointing to the facts in the record that show... Did the IJ not find him credible with the exception of some of the criminal conduct? Yes, but I'm just talking about who was the primary caregiver for those children, who raised those children while he was out working two jobs. It was the mother until... Did the IJ disbelieve him when he said that he took care of two of the children for a while? No, the IJ did not challenge him. When was that time period? When was that? When was what time period? When he took care of the two children. According to his testimony, he took care of the two children for one year prior to his arrest. How do you respond to the argument that given the nuances that it was just more important to have live testimony, to have the daughter testify rather than just reading her one-page letter? Well, an immigration judge has discretion to control the proceedings. They also have to weigh the impact on a minor of testifying in court and that trauma, especially if the outcome doesn't go the way she was hoping it would go. That's what an immigration judge also has to weigh. And in this case, the immigration judge found that her statement would likely be cumulative of the Had he actually read the written statements? Yes, in his decision, he has read. At the time when he said, I don't need live testimony because I have the written materials. Had he read the written materials? What he did was he reserved the right to call witnesses if there were questions and he found there were no questions. You're not answering my question. Did he not suggest when he said it, I think he used the word assume. Did he not make it clear that he had not read the written materials? I don't think it's clear what materials he read or didn't read. He said he didn't read the psychologist report. He said that. That one, but it's not clear what other materials he did or didn't read at the time of the hearing. I mean, the question is, how could he decide that it would be duplicative if he hadn't read it? Well, it was her burden to show what that evidence would, would, would, would, would, would show to articulate particular aspects describing the evidence she would present, and they failed to do that. So he was the IJ was within his jurisdiction within his discretion to deny the continuance. They hadn't articulated the facts that would be testified to. What are we to make of the amicus brief filed by so many former IJs who stress the importance of in-person hearing and the special rule, role of the immigration judges in developing the facts before rendering an opinion, particularly on something so factually heavy as,  they emphasize the importance of hearing in-person testimony and suggest that it would, it is an abuse of discretion to not permit it when it's requested. How do you respond? So that argument wasn't exhausted, but I would respond that the immigration judge has to weigh it. And in this case, having a minor testify, he has to weigh the effect on the 13 year old. He had, and then he had that. He didn't say that though. He did not articulate that as a reason. He didn't say, I'm worried about the impact of her testifying. He said it was duplicative. And, and, and from what they're saying, it is duplicative. She's testifying about how she will miss her father, how her bonds with her father. Well, that was in her statement. Was a one page handwritten statement. One page, but very concise. But what indication is there that he considered the possible effect on her of not being allowed to participate in a judicial proceeding where she requested the opportunity? Well, yeah, yeah, I don't, I can't answer that. But what I can say is that the psychologist interviewed Emily and he wrote a very detailed report based on his interview with Emily. And that is what the immigration judge relied heavily on as the expert report in the case. Right. He relied heavily on what the psychologist said were mitigating treatments that the kids could have, like breathing exercise and counseling. Breathing, weekly counseling sessions, you know, seeing the school counselor, uh, uh, medications for Jaden. Uh, so he, he did. Did the immigration judge, did the immigration judge articulate any other reason for denying the request for continuance other than he thought the testimony would be duplicative of the written materials? Uh, I, I believe that they hadn't, uh, specified what the evidence would, would, that would show. They hadn't said why, what witnesses. Did he say that? I'm talking about when he denied the request. Did he, did he say, um, anything other than it would be duplicative? I would have to go back to the record. I'm sorry. Okay. All right. We can, we'll find it. I was just wondering if you know off the top of your head. So, um, if there are no more questions, uh, we would ask that the court deny the petition for review. Thank you. Council, um, council for Mr. Martinez Roman has reserved three minutes. Council, you may proceed. Yes, your honors. I would just, um, reiterate and focus upon the, um, issues that you have clearly, um, questioned the government about, which is that it is evident from the record that the immigration judge did not review in advance the, um, submissions and found that they were, would be duplicative based on speculation. And that was the basis of his decision to deny a continuance to hear the live testimony. Um, the government repeatedly makes reference to things not being in the record, but Mr. Martinez Roman did not have the opportunity to complete his record. He was denied the opportunity to present the live witnesses on issues that were at the crux of his case at the crux of the hardship determination. And the live testimony would have addressed, um, some of these key matters on which immigration judge Conroy found an absence of evidence. Um, a fair system surely requires more before permanently separating a father from his children. The evidence that was submitted did show extraordinary hardship. As you have pointed out, they have been lacking an adequate caregiver, sleeping in a closet, losing their health insurance, and going without needed medical care. The, the air is below in the deprivation. How do you, um, address the argument that, that the IJ found in essence that the father's presence, continued presence wouldn't have really helped, wouldn't have really mattered? Is there anything in the record that addresses that question? I think the record is replete with evidence that his absence in terms of his two years and ongoing detention caused a tremendous spiral in the lives of the children. Dr. Giardino in his report covers, um, the psychological disorders that were triggered by his absence from severe depression to separation anxiety. And it is his clear recommendation that they require the presence of their father, given that there is a void of an adequate in their lives in order to avoid a catastrophic psychological damage in the future. Um, there's also evidence that he was the sole breadwinner for the family. Um, he took care of their, what about the government? The government's argument that, that the mother was taking care of the kids for a substantial period of time. I think this is one of the key points where judge Conroy entirely mischaracterized the evidence and filled it with speculation. Remember that he excluded the two witnesses, um, who had actually three witnesses who had firsthand knowledge of how the mother was functioning. Emily, as well as her, um, uh, friend and, uh, aunt would have testified people who are seeing them routinely, um, to exactly how little support the mother could provide. They could, they could fill in some of those gaps, but judge Conroy, instead of looking directly at the evidence presented, um, filled it with speculation and mischaracterization stating that the mother was capable and that, uh, some of the other witnesses could have assisted the family when they clearly stated to the contrary. Thank you. Thank you both. We'll reserve decision. Thank you very much. The next case on our